Good morning, Your Honor. May it please the Court, I'm John Carroll. I'm here on behalf of Plaintiff Patrick Novak at Alia. We're here on a motion to dismiss, filed and granted by the local district court, and she dismissed this on the basis that their alleged injuries are not fairly traceable to any challenged action of the United States. The United States engaged in any unconstitutional action in enforcing the Jones Act to demonstrate how plaintiff's vague claims of injury were caused by the United States. Having said that... What she really was talking about then was prudential standing. Prudential standing, correct, Your Honor. Talking about generalized grievance on prudential standing. Yes. And as the gateway to Article 3, standing to confer jurisdiction on this court, basically states that there must have suffered an injury, in fact, and it's concrete and not particularized. And we have filed declarations on behalf of each one of the plaintiffs showing very particular and provable injuries. So our basic contention here this morning is that by dismissing us without a look at the evidence that was before them and was very clearly set forth in our complaint with the declarations attached, that she denied us what should have been a summary judgment motion standard, which would have allowed us to have some evidence presented to show that, in fact, these are provable facts, that they are concrete. And that was denied. And based upon that alone, we think she should be reversed, because the standard requires that there be some evidentiary showing, and there was none. We were not allowed. Standing is not to be denied simply because many people... One of the things they're going to talk about in standing is with respect to the zone of interest of the statute, and they're talking about denying it because we have not met that standard. And the standing is not to be denied simply because many people suffer the same injury. We grant that we're here on behalf of only these plaintiffs and not for all the people of the state of Hawaii. The fact that they are basically injured by the impact of the Jones Act is why we're here at all. Well, even if you were here on behalf of all the people in Hawaii, couldn't it be a concrete injury that people in Hawaii all suffer? No one else in the United States suffers it, but people in Hawaii all do. I'm not sure that would even hurt you. Your Honor, if we had the resources, I would have filed it as a class action, but we did not. You did. You tried to, right? This is a putative class action, isn't it? Well, we didn't ask to have it certified as a class. But isn't that just because you haven't gotten to that stage? No, it was simply because I didn't have the... I mean, the complaint says... It says it's a class action on the complaint. Well... Individually and as representatives of a class of similarly situated persons. Yes, that is what it says in the complaint, Your Honor. However, we did not go through the process... Don't argue against yourself. Well, we did not certify it as a class, is all I'm saying. So, absolutely, if this court rules the way that it should rule today, that would end up having a class action impact, and that is certainly what I would hope to have happen. Could you clarify what relief you're seeking? Are you only seeking injunctive relief, or are you seeking damages? We're not seeking damages. We're simply asking this court to look at what the impact of the Jones Act is on this state in a particular... Patrick Novak, for instance, had a prosperous business. He was making in the millions per year. He was paying $4,000 a container to ship his goods worldwide, and they went, because Matson has no controls over them, went from $4,000 a container two years later to $11,500 a container. The net effect of that, which is very particularized and provable and can be shown at trial, he had to shut down the business, lay off 34 people. 51 people ended up losing their jobs here and then moving to another state to do business. That's directly caused by the impact. But you're not seeking damages for that. Your complaint actually says you are seeking damages, but I understand you've now backed away from that. Is that right? Your Honor, if it pleases the court, I am not seeking damages. I'm not even seeking attorney's fees. All we're seeking here today is to get the relief that I think this state is entitled to, and I would add that I've been trying to get this done for 40 years, and the political path, which theoretically they always argue, is not available to this man. But what's the legal basis for the claim? The complaint appears founded on the Commerce Clause. Is that correct? Yes, Your Honor, it is. But the Commerce Clause doesn't limit Congress's power within the field of foreign and interstate commerce, does it? Absolutely. How? How does it? How does it limit it? What authority is there that the Commerce Clause is a limitation on the federal government on Congress's authority in that field? The Commerce Clause is surely a limitation on what Congress can do outside the field of interstate commerce, but there's nothing in any court decision or statute that I've seen that suggests that it's a limitation on what Congress can do within that realm. Well, quite right, Your Honor. There's no precedent. I think the thing that comes closest to it is the United States against Great Britain, because that's about where we stand in comparison to what's happened. There's no challenge with respect to the one that we're bringing has ever been brought. And I would address the Court's attention to that. And there have been challenges that have been brought that have failed. I mean, you cited, too, the Curtin case, for example, in which the Supreme Court says that the Commerce Clause is not a limitation on Commerce's power within that field and that there's no geographical equality provision written into the Commerce Clause. Your Honor, we're talking about the image, what the continued assertion of this, what the impact is, and that is why we're here. And if you look at the history of the Commerce Clause, when they first put it into the end of it, when they were getting ready to make the Constitution law, the states were each one were sovereign nations, and there were constant impediments to traffic between interstate commerce between the various states. And they put this in specifically to provide that every state can have equal access to interstate commerce with the states. Well, states can't interfere. That's the dormant Commerce Clause principle, right? But Congress can do what it wants in regulating interstate commerce. I agree, Your Honor, with that. I understood, at least in your reply brief, to be switching to a takings theory instead of this Commerce Clause theory. Is that correct? That's correct, the Fifth Amendment. Are you really focusing now on is it a takings theory, or could you explain what your Fifth Amendment theory is? Well, the theory that we have is that, number one, by a judge denying us our day in court, we were not able to come in to prove the damages and to prove why. Well, you don't need to prove damages unless you've got a cause of action that entitles you to relief. And you said you weren't seeking damages. Well, we're not seeking monetary damages, Your Honor, but the continued impact of this law, whether they receive any money from being here or not, if that law is restricted or set aside, this is going to marvelously impact not only my clients, not only the plaintiffs, but also everybody else in the state. We're still waiting for what's the cause of action. I mean, I'm a resident of the state of Hawaii. I accept as a given that this statute may make life more expensive for me. I may claim personal injury. That doesn't mean that I've got a right to say the law doesn't apply or shouldn't apply or is unconstitutional. We need a legal theory for that. Your Honor, I'm not saying that it doesn't apply. What we're saying here is if you look at the history of all of the cases that involve the Commerce Clause, there's no case that even comes close to having the impact on a state as this one does. What case supports the theory you're trying to espouse? There is no such case. This is going to be a case of first impression. Well, then let me try a case you cited to us, which is current. We have repeatedly said the power given to Congress to regulate interstate and foreign commerce is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than those prescribed in the Constitution. So where are the limitations that you tell us the Constitution prevents Congress from enacting the Jones Act? Well, Your Honor, I think we have to look at what's the impact of this and what's the damage that proceeds from this. It's clear it makes things more expensive in Hawaii. Let's give you that. So we know it causes huge problems for people in Hawaii. Let's assume that. How do you challenge the law? What's your basis for challenging it? Well, Your Honor, what we're saying is, and perhaps I haven't articulated it very well, but this impact of this law has put up a barrier around this state, which totally eliminates our ability to have interstate commerce with the states, nations, and Indian tribes. There are no pipelines. And why can't Congress do that? What in the Constitution says, I mean, what if Congress says everything in Hawaii has to be produced in Hawaii? Could they say that? I mean, maybe they could say that. What stops Congress from saying Hawaii is an island and nothing can go into Hawaii? You have to make everything here. Congress could probably do that, right? Why can't Congress do that? We're supposed to have equal protection under the law, as far as I understand. And I think we have anything but unequal protection here because of this, and it's impacted everything from agriculture to businesses and everything else. Well, anyway, what I would ask. I guess what my colleagues are trying to say to you, Counselor, all of your arguments may be absolutely good, but we can't find a law by which you can attack the Jones Act under which you are suggesting. We looked at the Commerce Clause, and everything we see under the Commerce Clause says Congress can do whatever they want, as long as it's interstate commerce. And you're not even arguing it's intrastate commerce. Then we looked under the Fifth Amendment, and you didn't even allege that before, but we tried to come up with something for there, and we couldn't find it there. I appreciate that. So I guess our problem is we're trying to find that statute with which we can, if there is such a statute, attack the Jones Act. Or constitutional provision. We looked at due process, equal protection. I mean, we've tried to figure out. Give us a nugget upon which to seize. I don't think there is in your brief, and I don't think there is in your complaint, and I don't know whether there is at all. And that's the worry that I'm having. And so I didn't hear you hearing that that's what we're really trying to say to you. The Commerce Clause doesn't work. The Fifth Amendment doesn't work. So we don't know how to help. Well, may I quote from Massachusetts v. EPA? Sure. It's a federal civil procedure, and it's a litigant to whom Congress has accorded a procedural right to protect his concrete interest, can assert that right without meeting the normal standing requirements. Right, but if we assume you have standing, let's assume you have standing. What is the claim that gives you a cause of action? What's your legal theory? If we say, okay, you're allowed to be in court now, what are you going to say about why this is unconstitutional? We're saying that because of the impact of the failure to have open interstate commerce, we have, as I say, no highways, pipelines, railroads, things that even Alaska has, that we are totally isolated and to treat this state totally different from every other state, I think it's a horrendously, obviously bad thing that's happening for the state. But the Constitution doesn't have a provision that prohibits bad things. Well, Your Honor, I certainly agree with that, and I'm sure you do as well, being a resident here. But the fact of the matter is this court is the only place that we can come to to get redress, and I think that we do have concrete, provable injuries. We have actually met all of the various requirements to get standing. You may be the only court you can come to or be of the district court, but isn't this really an issue for Congress? Congress is the one that has the power and has exercised this power. Isn't that where you have to go to get relief from what they've done? Well, Your Honor, when the third Article III of the Constitution was designed, it was designed to make sure that the Congress could not get away with this kind of thing. And what's happening here is that the politicians are being bought off, which is what's happened over the years here, where people like, what's his name, well, Charles DeJue for one and Ed Case for another, brought up the issue of the Jones Act, and both were immediately lost their races. And this is political, and it's... Majority wins. Pardon? Majority wins. It does not change the fact that this is an oppressive, total violation. And, Your Honor, I mean, I hear what you're saying. By the way, procedure was my worst class in law school. Doing pretty well on the procedure. Doing pretty good on the procedure. We're just trying to find the claim. Well, anyway, Your Honor, I believe that this court can take a judicial notice, and there is a Rule 201 that allows that. Number one, we're insular. Number two, we're cut off from all of the shipping around the world. We're being hurt every day because of the continuation of this. There are no pipelines, highways, or railroads. When this was the Kingdom of Hawaii, the harbors were full of ships. There was great commerce here. Agriculture has failed. You can take judicial notice of all of those things. There's numerous different documentation now showing the adverse impact, and Hawaii gets the worst impact of any place in the world. And with this law, it's changed, and you folks can make history today by making that change based on what you can take judicial notice of, and I would respectfully ask the Court to do so. All right, to save the balance here, time for rebuttal? Which I probably won't. You may do so. We'll hear from the government. May it please the Court. Assistant United States Attorney, Rachel Moriyama, for Defendant Apo Lee, United States of America. Federal courts are courts of limited jurisdiction. There is no presumption of jurisdiction. The burden is squarely upon the plaintiffs. Whether you label it as a lack of prudential standing or a lack of Article III standing, plaintiff's complaint asserts only generalized grievances that fail to present. Really? It says Daniel Rocha paid fuel charges thereon and suffered directly pecuniary injury and damage as a result of the Zone Act. That sounds like an individual injury to me. But that is an injury that's shared by anyone. So what? Didn't Massachusetts' VEPA, the case he was citing about climate change, doesn't that say that it doesn't matter if a lot of people are affected? As long as it's a particular injury, doesn't it not matter? The number of people who are injured alone isn't as positive, but here the claims are so vague, so generalized. No, they're not. They say everyone in Hawaii is paying way more for everything they buy than they should have to. That's a very particularized injury for people who are buying things in Hawaii, isn't it? But, again, in addition to saying that they're injured, they still have to show causation and traceability, excuse me, and addressability. Is that really hard? I mean, think about it. If the Jones Act, as it does, prevents foreign competitors from entering the domestic shipping competition, is it hard to figure out that the absence of additional competitors and the requirement that shipping be done on lines owned by U.S. interests and staffed by U.S. labor with U.S. labor rates and everything else, isn't it really kind of a plausible inference that things would be cheaper if there were other shipping lines participating in this market? Absolutely not. There are so many factors that affect Hawaii's economy. You live here. You really think it wouldn't be any cheaper without the Jones Act? No, Your Honor. I don't know of anybody who has asserted that it wouldn't be cheaper without the Jones Act. Rather, Congress accepts and imposes the Jones Act for other reasons. That is, to maintain the U.S. maritime industry, which may or may not be Congress's prerogative. But to say that it's implausible and, hence, you can't have standing because it's so implausible that the Jones Act increases costs for shipping in Hawaii is an argument I have trouble understanding. Well, Your Honor, I think if you look at recent history with the drop in oil prices, that's an end horizon. The two shippers that do most of the ocean cargo shipping between the continental United States and Hawaii, they drop their rates. But, you know, I don't think that... Do U.S. shipyards produce ships for companies in, name any other major shipping center, Hong Kong, Japan, Liberia, whatever? Isn't it the case that U.S. shipyards produce ships that have to be built in U.S. shipyards because they're being bought or financed by the U.S. government? Yes. Yes. And I agree, Your Honor, that is the underlying policy purpose for the Jones Act. But to say that the Jones Act alone is the reason... Nobody's saying the Jones Act alone. His allegation is that it's not the sole reason, but because of the Jones Act, the complaint alleges his clients have suffered directly pecuniary injury and damages. And in the opposition to the motion to dismiss, there's a declaration from Ken Schooland that talks about how in order to ship his car, he had to go through California and all the way to Asia because there's no way to ship just from Hawaii to one place or the other. How is that not a specific injury caused by the Jones Act? He had to pay to go back and forth across the Pacific to get his car somewhere. That could have been caused, though, by the fact that there wasn't a big enough market between China and Hawaii. But isn't that because of the Jones Act? No. The Jones Act wouldn't apply if it's only between two nations. But if a ship could go from China to Hawaii to California and actually stop and pick things up and drop things off, wouldn't they? It'd be really nice. They could refuel in the middle. But they can't because of the Jones Act. But the Jones Act doesn't stop ocean shipping between Hawaii and China. And probably it's because there just isn't a market. But there is a huge market for ships going from China to California. And there's no reason other than the Jones Act for them to not stop along the way. If they could stop along the way, things would be cheaper in Hawaii, right? That's correct. But again, as a— This is the stage of a motion to dismiss. So it's not like the plaintiff is required to prove up the case. The requirement for pleading is to make out a case that's not so implausible. Correct. I guess I want to maybe take away from the arguments of my colleagues here, which they seem to be making. It seems to me that the appellants listed a whole list of reasons unrelated to the Jones Act, which caused competitors not to enter the shipping trade. This is what he listed. Entrenched market positions of present shipping companies. The large capital investment required in long delivery lead times. The substantial investment in infrastructure. The constraints in Hawaii port space. The high fixed costs relative to variable costs. The need to develop a broad base of customer relationships. The unique geographic location then seems to be the reason when I look at these. So how can I be certain based on his complaint that the Jones Act is even the culprit? That's correct, Your Honor. Why do you have to be certain at the stage of a motion to dismiss? That's the next question. Even though my colleague wants to again argue. That is the next question. It's still plaintiff's burden to show that there is, that they have enough of a personalized interest in the outcome of the case that they should be allowed to come before the court and make their argument. And why doesn't Mr. Skoulin meet that by saying he had to ship his car an extra journey across the Pacific? Because they really haven't shown that there is any wrongful action by the defendant in the United States. We are the named defendant that is the cause of the injury. They cannot trace it to any act or omission by the United States. And they also cannot show that it's more likely that a favorable ruling by this court would redress their injuries. So you think if the Jones Act were eliminated, it wouldn't change anything about shipping to Hawaii? It possibly could. It would definitely change shipping. And would that make things cheaper here? It might. But again, there are so many other factors that make the cost of living in Hawaii and the cost of doing business in Hawaii high. Well, it might still be more expensive than living in California, but it would be less than it is now. Don't they only have to show that it's likely that things would be 1% less or even a half a percent less? I mean, they don't have to show that it would be equal to living on the mainland. It just has to be that it would help. They have to show that it's not speculative, that it's likely to make a difference. And again, because there are so many factors involved, I don't think that they can make that showing. I'd ask one other question. This seems a little leading because I'm asking it to you. But, I mean, my big question is, if I look at these six reasons why the shipping companies don't ship to Hawaii, I'm wondering what in the plaintiff's complaint said anything about how Hawaii would change on these six reasons if the Jones Act were overturned? They didn't say that. And that is the problem with this case. Reading the complaint, it's very hard to understand the theory. Do they have to actually spell it out in the complaint, though? I mean, what is the case that says if you allege an injury and you allege something that intuitively is caused by what you're complaining about, that they have to actually connect all the dots in the complaint? Why can't they connect the dots later? At the pleading stage, is there any case that says you have to actually spell out every step of the causation chain in your complaint? I couldn't find a case that said that. I can't either. But I think, Your Honor, they still do need to provide a plain statement and explain. And here, they really just haven't. They just assume. But it's obvious, right? I mean, how could it not help the prices in Hawaii to have way more shipping to and from Hawaii? But, again, that's their alleged injury. In addition to the injury, they have to show causation to some wrongful act of the United States. Right. And they're alleging that the wrongful act is the Jones Act, that's keeping ships from stopping in between Asia and California. Well, no. They're not saying that the Jones Act is unconstitutional as written. They're not saying that it is. Well, yes, they are. I mean, they may not have a good theory for it, but that's exactly what they're saying. They're saying it violates the Commerce Clause somehow. But they have no theory. Well, that's a different issue, though. That's not about standing. That's about the merits. All right. Well, Your Honor, this court can also affirm the judgment below, based on that very issue, that the complaint fails to state a claim. And, again, the difficulty in this case is trying to find the theory, set up the straw man, and then the government is forced to try to knock that straw man down. And like the court, we went through it. As Judge Cliffin cited, the current case clearly stands for the proposition that there is no requirement of national uniformity in Commerce Clause legislation. The enactment of the Jones Act clearly was within the Commerce Clause authority of Congress. And with regard to that fifth amendment, related fifth amendment claim, again, in addition to it being waived since it's only raised here, plaintiffs have not identified some kind of a property right that needs to be protected. So you don't even get to whether they got through the process because it's unclear what is the right. There's no theory. And because they cannot articulate a plausible theory, the complaint must be dismissed for failure to state a claim. Why haven't you asserted sovereign immunity? Is it because of the APA Section 702 waiving sovereign immunity as injunctive relief or something else? No, because this case doesn't really involve any government action or inaction. But the United States is the defendant, so potentially you could have asserted sovereign immunity. I was trying to figure out why you didn't. It was an oversight, and it was something that I think we, in discussing this appeal, we thought, you know, how is he naming the United States as a defendant? Because we couldn't figure out a theory. It's an amorphous constitutional argument with no cited authority. So you're right, Your Honor, we probably should have argued the sovereign immunity. I think probably this falls under Section 702, though, which waives sovereign immunity for claims for injunctive relief against the United States. So probably there isn't sovereign immunity anyway, but it's a little bit unclear to me. Yeah, I mean, and that's the problem with Article III and, you know, the case and controversy requirements. So many concepts flow from it that are all intertwined. You know, it's not only standing, but political question issues, mootness. I think this case, the facts of this case, really do present a fact pattern that is the very kind of cases that led to the creation of the prudential standing argument. Well, I freely acknowledge this is a difficult case to categorize. Prudential standing, the Supreme Court seems to have reformed in Lexmark into zone of interest, and you've made a zone of interest argument that, to be honest, I don't understand either, because you're arguing that plaintiffs don't fall within the zone of interest protected by the Jones Act. Is that your argument? That was, Your Honor. But they're not trying to apply the Jones Act. They're trying to apply the Constitution to say the Jones Act is invalid. Don't plaintiffs fall within the zone of interest of people protected by the Constitution? But then again, you fall back into the generalized grievances, and the Supreme Court has held that courts should refrain from adjudicating abstract. This isn't abstract. They're saying this has taken dollars out of my pocket. Now we're back to the standing argument. It seems to me, I mean, I hear you, it's a tough case to categorize, but I haven't heard anything that tells me why ultimately they're not entitled to reach the merits. But even if they do reach the merits, they can't prevail because they haven't articulated a plausible legal theory. But even with regard to getting back to the standing issue, the Lexmark case, I agree, has created, I guess, a different analytical framework. It's really a cause of action analysis, and it asks for a statute. Is this plaintiff somebody the statute intends to permit proceed? But in this case, their action is based on the Constitution. Correct. And they're citizens. Presumably they're entitled to try to enforce the Constitution. But again, the zone of interest was only one of three parts of the old credential standing argument. And again, they are still raising a generalized grievance on behalf of everyone in the state of Hawaii. Suppose Hawaiian Electric overcharged everybody in some fashion, and somebody brings a lawsuit saying, imagine such a thing, right? Suppose Hawaiian Electric overcharges all of its customers by imposing a fee that they're not authorized to impose, and somebody brings a lawsuit saying, hey, wait a minute. This is costing me $17 last year, and it cost everybody in the state $17. Is there a lack of standing because everybody has the same complaint? No, not in that case under those facts. Well, here the plaintiffs are arguing this cost me money, and it cost everybody money. But each of the individuals will calculate it cost me this much for my business and my shipment. How is that an abstract complaint? Because in your Hawaiian Electric fact pattern, clearly the causation and the redressability factors are met. But if we disagree with you, that's a different standing issue. If we disagree with you and think there's causation, then the fact that it hurts everyone in Hawaii doesn't make it a generalized grievance that can't be considered. It can't. It can't because of exactly this hypo. It has to be that you can sue the electric company even if it's hurting everyone in Hawaii. Right. And that's exactly this. The Jones Act is hurting everyone in Hawaii. Well, I apologize. I'm not being clear. But I guess after Lexmark, it sounds like, you know, prudential standing and Article III standing have sort of been subsumed. Whether you have to show something in addition to that generalized grievance or, you know, if it's just a matter of changing the label and the source of the authority, that may be one thing. Alternatively, the Lexmark court may have been saying that now the generalized grievance issue is somehow subsumed in the injury effect element of the three-part Article III test. So even though, you know, there may be prudential standing or that's set aside, plaintiffs still cannot meet the Article III case and controversy requirement. And that's sort of intertwined with this whole idea of they can't state a cause of action. So there's no case or controversy. And as a result, this court should affirm the judgment below. Thank you. Mr. Carroll? May it please the Court, Your Honor. I already filed that HECO lawsuit. I'll expect it. My check's in the mail. Your Honor, may it please the Court. It's very clear to me the Court clearly understands why we're here and what we're trying to do. And I really do. What I would suggest as a possible remedy to make everybody, including this young lady, happy, is to remand this and have me amend the complaint for retrial. Did you argue that you should be given leave to amend? I was trying to figure out if you'd ask for that either below or here, and I couldn't find it. Well, maybe it's too late to ask, but I'll ask anyway. But I would hope that the Court, based upon everything that you clearly understand about the Jones Act, the Court could rule based on taking judicial notice of what's happening already. In the absence of that, if the Court please, I would be willing to go back and amend the complaint and refile it. If we did that, what would you allege as your cause of action? I would guess somebody who knows more about procedure than I do to write the complaint. But procedure, you may be doing fine. The question is, what's the constitutional provision that will entitle your clients to the relief they seek? Well, as I understand it, Your Honor, there's 14th Amendment, Fifth Amendment, equal access. There's a number of things that we could have put into our pleadings which were not there, and I'm already aware. But you've suggested them, you've argued some of them in your brief, and we're still looking to see if there's any there there. Because, frankly, if there's nothing there, what's the point of keeping this alive? Well, all I'm saying is that clearly there are Fifth Amendment taking, and there's no question about that. The Court can take that and decide on that basis. If there's some benefit to be had by having an amended complaint and remand, then that would certainly satisfy me. But you don't remember ever asking for it? I'm sorry? You don't ever ask for amending? We never asked to amend the complaint, no, Your Honor. All right. Thank you. We did file a motion for reconsideration. I understood that. And I would like to thank every one of you for your consideration. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Smith, Friedland